23-3241 Messerli v. AW Distributing Ms. French-Hodson? Yes, Your Honor. Ruthann French-Hodson, representing Plaintiff Appellant Robin Messerli, and I'd like to reserve two minutes for rebuttal. May it please the Court. This Court should recognize that in adopting the broad modified comparative fault statute, Kansas abolished contributory negligence and all analogous defenses dependent on plaintiff's culpability as complete bars. Kansas courts have set out detailed guidance on the mechanics and social policy in subsequent decisions. The guiding text and policies of Kansas products and comparative fault law should govern the choice of whether to recognize illegality as a total defense to a product's claim after the adoption of comparative fault. So in your opinion, the illegality should just be considered when apportioning the fault between the person who suffered the injury and the maker of the spray cans? That's correct. So if the person was committing a crime, the jury could say, oh, you know, it's really 75% of this related to this person's commission of the crime. But there was some negligence on behalf of the can manufacturer, so we're going to apportion 25% to them. Correct. And if that's the apportionment that the jury decided, then there would be no recovery for the plaintiff because the plaintiff's culpability would be greater than that of the manufacturer. How about 51% on the can manufacturer? Then under Kansas modified comparative fault, then there would be recovery for the plaintiff, but the damages would be reduced by the amount of culpability for the, in this case, plaintiff's son, Kyle Messerly, but the recovery to Robin Messerly would be decreased by the amount of culpability for the plaintiff. And that is in really in keeping with how Kansas, all of the other kind of listed analogous defenses that Kansas has considered in products cases, unreasonable use, assumption of risk, all of those, and now in the pattern instructions, when you get to comparative fault, you get instructed that if any of those previous reasons for culpability, unreasonable use, if that had a causal connection, you would consider that as part of your comparative fault analysis. And that's just typically now how Kansas governs those all or nothing defenses. How would your position apply in this fact pattern? Say I went over to Judge Timkovich's house to break in to steal his wife's jewelry, and when I got in, he had spilled a glass of water on the floor the night before, and because he was tired, didn't want to clean it up, and I slipped and fell and injured my tailbone, and a jury determined that 51% of the fault of that fall was Judge Timkovich for not cleaning up the water. I think that actually goes a little bit into what came in the Kansas Trial Lawyer Association's amicus brief, which is that Kansas does recognize duties to trespassers in certain circumstances. So we'd start with the duty, and if there was a duty there, then you would have the duty, and then it would be a comparison fault, and that is a choice that the Kansas courts have made on how to apportion faults when both parties have some culpability. And in the case of trespassers, we don't have that as much in the products context, but it is also one in which there is a clear Kansas policy on trespassers and the duties to trespassers that allows for even criminal trespassers that there may be a duty of care given to them if it's reasonably foreseeable. And the similar thing, the similar principles exist here as well. So the answer to that was that I get 51% of my damages from Judge Timkovich?  Okay. I object. Is the comparative fault regime, is that a legislative creation, or is that by the Kansas Supreme Court? That's a really good question, and it's actually a little bit of both. So Kansas, through both legislative and judicial decision-making, has established comparative faults. So the legislature adopted 60258A, which allows for modified comparative faults for the negligence claims, and it would cover cases where contributory negligence had previously applied. In Ari Andando, the Kansas Supreme Court said that that meant contributory negligence or any of the analogous defenses. In the Kennedy case, and subsequently in the Forsyth case, the Kansas Supreme Court then extended this policy and adopted the modified comparative faults of 6258A for strict liability product cases and for implied warranty cases. Were products liability and strict liability, was that a creation of the Supreme Court, or was that also a legislative pronouncement? That was a creation of the Kansas Supreme Court. So in Forsyth, they explicitly say that they are adopting 60258A. They are explicitly adopting the statutory scheme into strict liability and implied warranty cases, but they are judicially adopting it. It's not a legislative adoption. In Forsyth, they mention, the Kansas Supreme Court mentions, that it wouldn't make sense to have a different policy for negligence or strict liability because you may come into cases where there may be negligence of some parties. In fact, that's what happened in Kennedy. There might have been negligence in spraying of the chemical, but there was strict liability of the manufacturer, and so it would make sense that everybody had a comparative fault. So it was a judicial policymaking in Kennedy to adopt modified comparative faults. Is it currently the law of Kansas that the illegality defense does apply to torts? That is not clear. The only cases where illegality was mentioned that I can find in any type of tort cases were the Orr case and the Fleming's Coal cases from over 100 years ago, and those were negligence cases. So are you saying it's never been clearly established? Correct. There is no instance of illegality being used in a products case. The only other case that we happen to have that is post the adoption of comparative faults is a legal malpractice case, and in that case, the court was never even briefed or deciding on whether such a defense exists or how it would have been affected by the comparative fault regime, but we have none in the products context and none that defendants can point to or the district court could point to where illegality was a defense to product liability cases. And how can we be confident that our eerie guess on what the Kansas Supreme Court would do? In fact, I'm a little surprised you didn't start Kansas Court since that's what we're talking about. Yes, and I do want to say that I don't know if we can be confident exactly what the Kansas Supreme Court would do, and that is why we filed the motion to certify, and that would be our first request for this panel is to certify. There isn't a clear answer, and the district court acknowledged that, that it was predicting because it could find no cases that would indicate one way or the other and was predicting based on the policies of other states, and so our first request is for you to certify to the Kansas Supreme Court given the important policy issues that are at play and the novel issue here, but given that that is fully in your discretion, I also want to, you know, handle the substantive basins if you decide to. Yeah, what do you think the strongest case for your position is from other jurisdictions? Probably the strongest case is the other case with a similar statutory scheme. It's the Arendando case out of Texas. A little confusing because there is both an Arendando decision in Kansas and one in Texas, but there the Texas Supreme Court was considering a modified comparative fault statute again and then was asked very explicitly whether that broad modified comparative fault statute abrogated the defense of, I can't remember there if it was called illegality or unlawful conduct, but one of those kind of similar defenses and decided that the broad statutory language left no room in that case for these all-or-nothing defenses such as the unlawful conduct. So I think that's the most analogous, but I think that's also a decision that, you know, different state courts have decided different things both about the interplay between a modified comparative fault and the statutes. I think we have a lot of good indications from Kansas that they have a similar policy to Texas, but courts have come out different ways. They have also fashioned these defenses in very different ways. You could look at New York, Connecticut, some of the states that defendants point to, Iowa, all of them restrict the use of their unlawful conduct defenses to major crimes, felonies, and there's no indication that something as here, a misdemeanor, a Class B misdemeanor would rise to the kind of level that even in the states that do apply some version would grant here. And so I think there is very much room for us not to predict if such a defense is going to be adopted, that it would look like the one that was adopted by the district court. I mean, if you take what the district court said, that any injury that arises out of illegal conduct, that would mean that a mother, you know, rushing to her child's daycare but following another vehicle too closely, a misdemeanor in Kansas, she would be barred from suing a vehicle manufacturer for faulty airbags. The kind of rule that we have from the district court. Is that right? I thought that there had to be proximate cause. There has to be a causal connection. And in the instance that I'm discussing here, if you're following too closely and you got into a wreck, one of the causes may be following too closely, but it's also part of the injury would have been the airbag failing to deploy. And in a normal comparative fault, both of those. Wouldn't it have to be your airbag that the illegal conduct caused the airbag not to deploy? Under your hypothetical? I'm not sure if it would. Because if your illegal conduct caused the crash, that's different than the illegal conduct causing your airbag not to, or different than the illegal conduct causing your airbag not to deploy. What if maybe you, what if in that situation, the allegation was that you had unlawfully disabled your airbag? Wouldn't that be closer? It might be closer and that might be one. Again, I think there would be, there would be fault involved. But the rule that the Kansas or that the district court set forth was that the injury just had to arise from illegal conduct. It didn't necessarily have to be involved. And in fact, that kind of gets a little bit to how in party delicto used to apply, which was that there had to be some kind of joint conspiracy or joint action between the parties for it to apply and not just simply unconnected defenses. And so I think the kind of broad rule that we have here has not ever shown up in Kansas courts, but also one in which takes away what Kansas has said is a really broad role for juries in deciding those types of questions of causation and fault. One of the more interesting things is that in going back through all of the cases, part of this, you know, it extends to duty. The duty exists even for criminal trespassers. In the proximate cause context, the Kansas Supreme Court has decided that proximate cause no longer has any force in Kansas products cases. It is simply a causal connection and not looking at. Do you take issue with the pharmacist cases? I think the pharmacist cases are different in a couple of different ways. Do you take issue with them? In other words, are they wrongly decided or do you make room with your rule where they are correctly decided? It's hard to say whether they are wrongly decided. They're decided on other courts' laws. Well, you have two sides of illegality there, right? You have the person who's getting the OxyContin and you have the person who's selling it, both knowing that something illegal is happening. And in that instance, no liability, right? The illegality defense defeats a civil suit. That would be the impari delicto defense. And usually how that weighs is you have to have joint conspirators. And that was what happened in most of these pharmacist cases is there was a pharmacist and then the person kind of working in a joint scheme with them. And so you had joint conspirators that were both working voluntarily and freely together. And no civil liability. Right. And then you weigh their culpability and to determine. I remember the cases, but I'm still waiting as far as do you agree that there's no civil liability in that instance? I don't think Kansas recognizes them for products cases. Is it odd to say that in that instance where you have two culpable criminal parties, no liability, but in this one where you only have one and a relatively innocent, if you're using the product correctly, manufacturer, that there is liability? That seems odd to me. I would push back a little bit on the relatively innocent manufacturer. Well, compared to the pharmacist. Given here the allegations of longstanding knowledge of this particular use of the product and continuing to put in a highly addictive propellant that can be deadly on the first use, despite other alternatives being available, taking on a duty to put in a bitter end that does not work, that could have prevented the very injury here, and then not warning in a way in which case we get a presumption. I think, though, in Kansas there is no indication that the in parte delicto would apply for those cases either. We don't have that as well. And that defense has kind of been left behind by defendants in their briefing here. All right. Your time has expired. We took it all. I'll give you a little bit of rebuttal, though. Thank you. Mr. Nichols? Good morning, and may it please the courts. My name is Stephen Nichols on behalf of the defendants Appelese. I'm also here with Scott Kaiser on behalf of Falcon, Jared Harp on behalf of Narazza, and Mitchell Malachowski on behalf of the A.W. defendants. The issue before this court is both narrow and straightforward. Whether a plaintiff can assert tort claims against a manufacturer when those claims arise from the user's illegal act of huffing computer duster in violation of Kansas criminal law. The district court correctly recognized that the illegality defense in Kansas barred those claims, and we asked this court to affirm the district court's decision for two reasons. First, Kansas recognizes the illegality defense, and it has not been abrogated by the adoption of comparative fault in 1974, nor the adoption of the Kansas Product Liability Act in 1981. And second. Has there been any legislative activity in this area for the illegality defense, proposed statutes or what have you? From our review, there has not been, Your Honor, although certainly there are other states that have codified the illegality defense by statute. Kansas, like New Mexico, for example, recognizes illegality or the wrongful conduct doctrine in New Mexico under the common law. The same question I asked your opponent, and that is the best case from another jurisdiction that lays forth the policy and the principle. I think there's two, and I think there's one recently from this circuit. The Inge v. McClellan decision is a case that specifically identified whether the wrongful conduct or wrongful acts doctrine in New Mexico had been abrogated by comparative fault there in New Mexico, a pure comparative fault statute had been adopted. Looking at that decision, Inge quoted from the De Smet decision in New Mexico, a 1950s decision, and found that the illegality or wrongful conduct doctrine was compatible with the adoption of comparative fault in New Mexico. Do any of those other states allow the illegality defense to apply to a misdemeanor? Your Honor, some of the states that have codified it by statute, we acknowledge have made the policy decision to limit the application of the illegality defense to felonies. However, we have supporting authority from Kansas. The Richards decision, albeit old, did apply the illegality defense in the case of a misdemeanor violation of a statute. So there is authority in Kansas for the application of the illegality defense on the face of the complaint here. Moreover, in the Inge decision, I don't believe it was ever specified whether it was a felony or misdemeanor conduct that the plaintiffs, whose claims were barred and affirmed in the Tenth Circuit on a motion to dismiss, whether that conduct was a felony or misdemeanor. So moving into my first point, Kansas does recognize the illegality defense, and as cited in our briefing, we've identified at least six cases, both by the Kansas Supreme Court and the Kansas Court of Appeals, that have applied that or recognized the doctrine in very narrow circumstances. Certainly, it has been recognized both in the or, the Richards, and the Bakerley decisions by the Kansas Supreme Court, but also Kansas Court of Appeals decisions after the adoption of comparative fault. Albeit some of those decisions were in the context of intentional tort claims or insurance indemnification claims, as plaintiff correctly points out, but certainly it has been recognized in a legal malpractice case as recently as 2013 by the Kansas Court of Appeals. The legality defense does apply in Kansas, and in citing the American jurisprudence of torts, Superior Act 92 and Bakerley, you can find the supporting policy rationale for that rule in Kansas. That general policy being, the courts should not permit a person to take advantage of his own wrong or to found any claim on his own iniquity. Has the Kansas Supreme Court addressed any of these all-or-nothing defenses since the adoption of comparative fault? They have, Your Honor, and I think the Simmons v. Porter decision from 2013 is a useful example of the difference between the assumption of the risk doctrine and all-or-nothing defense that the Kansas Supreme Court there held was abrogated by the adoption of comparative negligence. In reaching that decision, the Kansas Supreme Court surveyed many other states that had modified or abrogated their assumption of the risk doctrine based on the adoption of comparative negligence or comparative fault. Some of those decisions, specifically citing a New Mexico decision, the Galtinieri case from 2000, or excuse me, citing a New Mexico Supreme Court case, that did modify the assumption of the risk doctrine. However, as this Court is aware, the wrongful conduct doctrine continues to apply in New Mexico even after that modification of the assumption of the risk. And I think that makes sense based on the policy distinction that the Kansas Supreme Court has recognized, that this Court has recognized in applying New Mexico law, that the general policy of the courts being not to permit a person to take advantage of their own wrong. So I think in citing both the New Mexico decision recognizing the difference between, maybe it puts it perhaps in abrogation of assumption of the risk, but continue to apply the illegality or wrongful conduct doctrine, the simple adoption of comparative fault or comparative negligence in Kansas does not explicitly nor implicitly abrogate the illegality defense. Has the American Law Institute, through the restatement of torts, taken a position on the illegality defense in these circumstances? So, yes. In the second restatement of torts, certainly you could look to section 889, comment B, which applies the narrow exception here where a plaintiff in violation of a criminal statute that is intended to prevent the specific harm here, inhaling computer duster, which can certainly cause harm, would apply. So the restatement second of torts 889, comment B, would address that issue. I did want to note as well that I believe there is an argument that the, or at least in the briefing, that the Kansas Product Liability Act may have also abrogated the illegality defense. But I think as noted in our briefing, product liability law in Kansas is governed by both the KPLA and the common law. Here the illegality defense is a common law defense, that would apply here. And although there has been some abrogation of all or nothing defenses, I think it is worth noting that the KPLA itself codifies several all or nothing defenses. If you look at KSA 63303, that's the 10-year statute of repose, but also 63305, for failure to warn claims, there is a all or nothing defense based on the sophisticated user or open obvious dangers. Certainly there is contemplation that not all or nothing defenses have been subsumed by the KPLA or the adoption of comparative fault, and the illegality defense would apply equally in the product liability context. Could the Supreme Court abrogate, or do you think the legislature has to do that? That's a good question, Your Honor. I would believe it would need to come from the legislature to do so. Certainly you have seen legislatures take a position on adopting or codifying illegality defense. However, we do not believe this is a question that needs to be certified to the Kansas Supreme Court. Specifically, as I've explained before, this is not a novel issue. The Kansas Supreme Court has recognized this defense in 1900, 1919, 1964. Kansas Courts of Appeals have recognized it in 1995, 1998, 2006, and 2013. Certainly the context changes based on the claims at issue. However, the principle applies, and the Kansas Supreme Court has spoken to the policy of why there is an illegality defense that has been recognized in these decisions. So I do not believe a motion to certify should be granted in this case. I do not believe it is an unsettled question of law, as the district court correctly decided in denying plaintiffs' motion to certify at the district court level six months after receiving an adverse decision in that case. And further, the district court correctly applied the illegality defense to the face of the complaint. Here, plaintiff does not and has not disputed that Kyle Miserly unfortunately violated Kansas criminal law in 2018 when he was introduced to huffing computer duster to experience a brief intoxication by a work colleague. It doesn't seem like there's any middle ground here, which is to say, on the one hand, we don't want people dying of this, and it's the product itself. It's the DFE and the compressed gas, and it's serving its purpose. And on the other hand, it's not an illegal product. Yes, Your Honor. And so depending on what we say or the Kansas court says, it's one or the other, isn't it? I think in this narrow set of facts, it would be, yes. But I do think there is a policy that has been spoken to, which is the legislature's policy of adopting a statute to criminalize this behavior in 2009. This is not a traffic statute. This is a specific statute intended to prevent harm to people from inhaling all different types of chemicals that are specifically listed. One of those chemicals is halogenated hydrocarbons, which is what difluorothane is. The structure of that statute, I think, fits squarely within Restatement 889, Comment B. This is specifically the context where it would apply. And I believe the causal issue here is completely intertwined with the claims brought. To prove or establish any of the claims brought by plaintiffs in this lawsuit would require a showing of Kyle Miserly's illegal use of Huffington Computer Duster in violation of Kansas criminal law. For example, the strict liability design defect claim, the theory that the product was defectively designed, that is, making it easier to inhale computer duster, would, of course, require the plaintiff to show that computer duster was inhaled, in this case, starting in 2018 when Kyle Miserly chose to Huff Computer Duster when introduced by his work colleague to do so. I'll conclude by just briefly noting the due process argument was not raised at the district court level. We believe that argument has been waived. But as discussed previously, we do not believe there was any due process violation here. The illegality defense in Kansas is not new. Certainly, the policy supporting its application in the context we've identified in our briefing also supports its application on the facts of this case. If your honors have any additional questions, I'd be happy to answer them. Otherwise, we'll conclude. Thank you, counsel. If you're excused, go ahead and give Ms. Brinchot some two minutes. Thank you, your honor. I just want to quickly hit on, we heard about the illegality defense used in different contexts and how it continues to apply. But I would focus the court back on the major products cases, Kennedy, and then two that I didn't get to discuss in great detail.  Which would be the Kansas Arendando decision and the Simmons decision, which were, again, product liability cases. And the Arendando decision, or at least the Arendando decision was a products case. And in that case, it was the defendant that violated a criminal statute and committed a misdemeanor. And the Kansas Supreme Court concluded that it was state policy to allow a defendant who violated a criminal statute to compare fault rather than bear the full responsibility for the injury under the previous statutory system of negligence per se. It would be incongruous to allow a defendant who violated the law and committed a misdemeanor to compare fault, but bar a plaintiff who committed a misdemeanor to do the same. The court in Kennedy, again, emphasized that provision and said, when there is a finding that the criminal statute was violated, the negligence of the other party is to be compared to that of the violator of the criminal statute. And then in Simmons, which was discussed previously, that was the one in which the Kansas court decided whether kind of an unlisted, all or nothing affirmative defense assumption of risk was abrogated by the broad comparative fault statute. And they looked and they said, states have done a lot of different ways, similar to what we have here. They've gone a lot of different ways. We find most persuasive how Idaho went about their decision and they adopted the kind of approach of Idaho and concluded that they would not go about perpetuating a gross legal inconsistency by prohibiting the use of contributory negligence as an absolute bar, yet allow its effect to continue under the guise of the affirmative defense at issue assumption of risk. And that is exactly what happened here, where the district court dismissed plaintiff's negligence claims and strict liability claims under the guise of illegality. Thank you. Thank you, counsel. All right, counsel, excused and the case is submitted.